**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JAMES DESTRY HAMM,** | ) | |
| **ID # 01902108,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:16-CV-1582-G (BH)** |
| | ) | |
| **LORIE DAVIS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent,** | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

James Destry Hamm (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  He challenges his conviction for stalking in Cause No. 2-13-340 in the 382nd Judicial District Court of Rockwall County, Texas. The respondent is Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent).

### A.    State Court Proceedings

After the State indicted Petitioner for stalking on June 26, 2013, (*see* doc. 10-2 at 7),[1] in violation of Texas Penal Code § 42.072,  he pleaded not guilty and was tried before a jury on

---

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

November 19, 2013.

Petitioner, who appeared to be in his mid-forties, repeatedly drove by the sixteen-year-old complainant about once a week during her walk from high school to work and honked, smiled, and waved at her. She did not know him. Three or four weeks after these incidents began, the complainant saw him turn into the parking lot of a convenience store that she was walking toward. He watched and waited for her to approach the store. As she came to the doors, he walked across the sidewalk, opened the door for her, and said, "Hey, how are you doing?" She did not respond and went into the store. He went into the store, purchased cigarettes, and then watched the complainant "like he was checking [her] out" as she waited in line to purchase a drink. He then left and drove away. The complainant was "scared as he pulled up," because it appeared that he was "going to attempt" to "match [her] schedule and kidnap [her] or something." She had learned in school that "someone may attempt to kidnap you if they are following you and you don't know them."

During the summer, Petitioner honked and waved at the complainant a couple of times. At the end of summer, when she began her senior year of school, he began to honk to get her attention once every one or two weeks at the same intersection. In late September, as the complainant left a store after purchasing a drink, she noticed that Petitioner was driving very slowly beside her. When she looked at him, he waved, mouthed words to her that she could not understand, and "made gestures beckoning" her. He pointed at the passenger seat of his car and asked her to get in the car with him. She was panicked and concerned that he could kidnap her and "that he might stop the car and get out and pull me into the car[.]" After she turned away, he drove off. She noted the license plate number. The complainant and her mother called the police to report the incident and the license plate number.

2

A police officer determined that the car was Petitioner's. He went to Petitioner's home and explained to him that the police department received a call from a concerned mother and daughter about the daughter's safety. The officer told Petitioner that the girl was a juvenile and that it would be in Petitioner's best interests not to make any more contact with her because she was in fear of her safety. Petitioner said that he did not think that he was doing anything wrong. He said, "Well, how am I supposed to get a date if I can't talk to anyone?" The officer said, "Well, I'm not telling you [that] you can't speak to anyone, but this particular individual, she is very concerned about her safety, and it would just be in your best interests not to speak with her and make any more contact with her." The officer thought that Petitioner understood the seriousness of the matter. Petitioner apologized and assured the officer that he would not make any more contact with the complainant. The officer testified that when a person continues engaging in conduct that the police requested that he stop, "[i]t basically tells me that they didn't comprehend it or they're just ignoring the law and going to continue, you know, harassing or stalking someone."

The complainant did not see Petitioner for several months after the officer met with him. During the spring semester, Petitioner began to follow and honk at her again. After two or three of these incidents, Petitioner drove up the street behind the complainant as she walked on the sidewalk and followed her. He honked, and when she did not look at him, he honked again. When she looked at Petitioner, he smiled, waved, and then drove away.

The complainant and her mother reported the incident to the police. A second police officer spoke with the first officer, who said that he had "informed [Petitioner] he had placed a juvenile female in fear due to his repeated attempted contacts with her; that she was young; that it was inappropriate; that a man of his age should not be approaching young girls in this fashion; and that

3

he was to stop having contact with her."

The second officer went to Petitioner's home and interviewed him. The officer "reminded him that [the first officer] had told him previously months earlier that his behavior had placed [the complainant] in fear and he had been told to stay away from her, and here now the same pattern of behavior, same girl, and that he had placed her in fear where she was left crying at an intersection." Petitioner eventually admitted that he knew to whom the officer was referring, but he said that it was a coincidence that he was near her. Petitioner "did not get the point," and he made excuses about his behavior and changed his story and his excuse about why there was nothing wrong with his behavior. The officer tried to give him the opportunity to provide a reasonable explanation for his repeated behavior, but the officer did not think that his responses and excuses were reasonable. The officer obtained a warrant for Petitioner's arrest. *See Hamm v. State*, No. 05-13-01687–CR, 2015 WL 1035869 at *1-2 (Tex. App. – Dallas March 6, 2015).

Petitioner was convicted of stalking and sentenced to six years' imprisonment. (*See* doc. 10-2 at 78.)

The judgment was affirmed on appeal. *See Hamm*, 2015 WL 1035869. The Texas Court of Criminal Appeals denied the petition for discretionary review. *Hamm v. State*, PD-307-15 (Tex. Crim. App. Sept. 23, 2015). Petitioner's state habeas application was signed on October 30, 2015, and received by the court on November 9, 2015. (*See* doc. 10-14 at 6, 22.) On January 20, it was denied without written order. (Doc. 10-13); *see Ex parte Hamm*, WR-84,370-01 (Tex. Crim. App. Jan. 20, 2016).

**B.    Substantive Claims**

Petitioner's habeas petition, signed on June 6, 2016, raises the following grounds:

(1) The jury instructions did not include the elements necessary to find him guilty;

(2) The jury instructions did not require the jury to determine whether he engaged in conduct that he knew or reasonably believed that the complainant would regard as threatening bodily injury or death;

(3) There was insufficient evident to support the conviction;

(4) His actions were protected by the First Amendment.

(*See* doc. 3 at 6-7.)  Respondent filed a response on October 25, 2016.  (Doc. 11.)  Petitioner filed a reply on November 16, 2016.  (Doc. 13.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  JURY INSTRUCTIONS

Petitioner contends that the jury instructions did not include the essential elements of the offense, and did not require the jury to determine whether he engaged in conduct that he knew or reasonably believed that the complainant would regard as threatening bodily injury or death.

To warrant habeas relief for a violation of due process resulting from an error in the trial court's instructions to the jury, the court must find that the jury charge error rendered the entire trial fundamentally unfair.  *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir. 1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154–55 (1977)).  The question is whether the alleged invalid instruction "by itself so infected the entire trial that the resulting conviction violated due process, not merely if the instruction was undesirable, erroneous, or universally condemned."  *Wright v. Director*, TDCJ, No. 9:11–CV–204, 2012 WL 7159911, at * 20 (E.D. Tex. Oct. 2, 2010) (citing *Henderson*, 431 U.S. at 155), *rep. and rec. adopted*, 2013 WL 607850 (E.D. Tex. Feb. 19, 2013).  The jury instruction at issue may not be considered in isolation; it must be considered in the context of the instructions as a whole and the trial record.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Petitioner raised his jury instruction issues on direct appeal.  He contended that the application paragraph in the jury charge at the guilt-innocence phase of trial was fundamentally erroneous because it omitted the element of the offense that a reasonable person would fear bodily injury or death from his actions.  He also contended that the application paragraph was fundamentally erroneous because it did not require the jury to determine whether he engaged in conduct that he knew or reasonably believed that the complainant would regard as threatening bodily injury or death; it only required the jury to determine whether Petitioner  knew or reasonably believed that the complainant would regard the conduct as threatening.  *See Hamm*, 2015 WL

1035869 at *2.

The appellate court examined the stalking statute, the abstract paragraph in the jury instructions that set out the law regarding stalking, and the paragraph in the jury charge that applied the law to Petitioner.  The version of Tex. Penal Code § 42.072 applicable to Petitioner provided:

> (a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>
>> (1) the actor knows or reasonably believes the other person will regard as threatening:
>>
>>> (A) bodily injury or death for the other person;
>>>
>>> ....
>>
>> (2) causes the other person ... to be placed in fear of bodily injury or death ...; [and] ....
>>
>> (3) would cause a reasonable person to fear:
>>
>>> (A) bodily injury or death for himself or herself[.]

*Hamm*, 2015 WL 1035869 at *3.

The abstract paragraph of the jury instructions stated:

> Our law provides that a person commits an offense if, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, the person knowingly engages in conduct that the person knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person, and causes the other person to be placed in fear of bodily injury or death, and would cause a reasonable person to fear bodily injury or death for himself or herself.
>
> ....
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.

*Id*.

8

The application paragraph in the jury charge stated:

> Now, if you find from the evidence beyond a reasonable doubt that between the dates of on or about June 1, 2012 and May 10, 2013, in Rockwall County, Texas, the defendant, JAMES DESTRY HAMM, did then and there unlawfully, knowingly engage in conduct directed specifically toward [the complainant] that the defendant knew or reasonably believed the said [complainant] would regard as threatening, and the defendant's conduct would cause fear, and did cause [the complainant] to fear bodily injury or death for said [complainant], by following [the complainant] on more than one occasion and by continuing to follow [the complainant] after being notified by [the first police officer] that the defendant was placing [the complainant] in fear, and it is further presented in and to said Court, that each of the foregoing acts was committed pursuant to the same scheme or course of conduct that was directed specifically at [the complainant], then you will find the defendant guilty as charged in the indictment.

*Id*.

The appellate court noted that the abstract paragraph in the jury instructions set out the first element of the offense in its entirety, including the requirement that a person commits the offense if he "engages in conduct that the person knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person." It also set out the third element, that a person commits the offense if his conduct "would cause a reasonable person to fear bodily injury or death for himself or herself."

The application paragraph of the charge, however, stated the first element of stalking, that Petitioner "engaged in conduct that he knew or reasonably believed the said [complainant] would regard as threatening," but did not include the last phrase of that element, "bodily injury or death for the other person." It should have stated that Petitioner engaged in conduct that he knew or reasonably believed the complainant would regard as threatening bodily injury or death to her. As for the third element, the application paragraph required the jury to determine beyond a reasonable doubt whether "[Petitioner's] conduct would cause fear[.]" *Id*. at 5.

9

The appellate court discussed opinions in analogous jury charge cases where the abstract paragraph fully set out the elements, but the application paragraph did not. *See id*. It determined that the application paragraph "tacitly incorporate[d] an abstract proposition of law" that preceded the application paragraph in the jury charge. The application paragraph "informed the jury under what circumstances they could convict appellant." "[T]wo of these circumstances – that the defendant knew or reasonably believed that the other person would regard his conduct 'as threatening' and that '[Petitioner's] conduct would cause fear" – were 'completely explained to the jury' in the abstract paragraph, which made clear that [Petitioner] must have known or reasonably believed that the other person would regard his conduct as "threatening bodily injury or death to the other person" and [set out] the requirement that his conduct "would cause a reasonable person to fear bodily injury or death." The appellate court therefore determined that the jury charge "provided a 'complete map' to the jury of each step that they had to follow in order to convict [Petitioner]. *Id*. at 5. It explained that "the jury charge contained a 'logically consistent combination of' the application paragraph with the earlier abstract paragraph that laid out the three elements of stalking." *Id*. at 4. Consequently, the appellate court held that the jury charge was not erroneous. *Id*. at *6.

Petitioner has not shown that the state court's rejection of his claims was unreasonable, when the jury instructions are considered as a whole. *See McGuire*, 502 U.S. at 72.

## IV. SUFFICIENCY OF EVIDENCE

Petitioner contends that the evidence was insufficient to show that he reasonably believed that the complainant would regard his conduct as threatening bodily injury or death.

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that

the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir.1999).

This issue was raised on appeal, and the appellate court held that the evidence was sufficient to support his conviction. The first police officer informed Petitioner that his conduct placed the complainant in fear for her safety, and that it would be in his best interest to cease contact with her. That officer thought that Petitioner understood the seriousness of the matter, and Petitioner assured the officer that would not make any more contact with the complainant. The court held that the evidence was sufficient for a reasonable factfinder to find that Petitioner knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death.

Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## V. FIRST AMENDMENT

Petitioner contends that his behavior was protected by the First Amendment. Respondent

11

argues that this claim is unexhausted and procedurally barred.

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust under § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.

Petitioner did not raise his First Amendment claim in his petition for discretionary review or the state habeas application. This claim is therefore unexhausted.

Notwithstanding the lack of exhaustion, the claim also is procedurally barred from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *Id*. In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id*.; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred). Here, if Petitioner brought his unexhausted claim in a subsequent state habeas corpus application, the Court of Criminal Appeals would consider the claim to be procedurally defaulted as a successive state habeas application under

12

Article 11.07 § 4 of the Texas Code of Criminal Procedure, so his claim is procedurally barred from federal habeas review.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.  Petitioner has not shown he is entitled to an evidentiary hearing.

## VII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 12th day of June, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13